FILED

FEB 18 2016

Clerk, U.S. District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ELK PETROLEUM, Inc., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> vs. <br><br> ROCKY MOUNTAIN REGIONAL DIRECTOR, BUREAU OF INDIAN AFFAIRS and the UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF INDIAN AFFAIRS, <br><br> Defendants/Counterclaim-Plaintiffs. | CV 14-30-BLG-SPW <br><br> OPINION and ORDER |

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiff/Counterclaim-Defendant Elk Petroleum, Inc. ("Elk Petroleum") and Defendants/Counterclaim-Plaintiffs Rocky Mountain Regional Director, Bureau of Indian Affairs and the United States Department of the Interior, Bureau of Indian Affairs (collectively "Regional Director"). For the reasons discussed below, the Court denies Elk Petroleum's motion and grants the Regional Director's motion.

**I. Background**

In early 2008, the Crow Tribe of Indians ("Crow Tribe") and Elk Petroleum agreed to an oil and gas lease ("Lease"). In the Lease, Elk Petroleum had the

1

exclusive right to explore, develop, and produce oil and gas on an estimated 88,420 acres on the Crow Indian Reservation. AR 381.[1] In exchange, Elk Petroleum agreed to pay the Crow Tribe a bonus of $5 per acre, annual rent of $2 per acre, and a royalty on all oil and gas produced from the Reservation. AR 384. Pursuant to the Indian Mineral Development Act of 1982, 25 U.S.C. §§ 2101, *et seq.*, the Crow Tribe submitted the Lease to the Bureau of Indians Affairs ("BIA") Superintendent George Gover and requested that he recommend that the Regional Director approve the Lease. AR 369. In April 2008, Superintendent Gover recommended approval to the Regional Director. AR 345-346.

On June 26, 2008, the Regional Director notified the Crow Tribe via letter that he intended to approve the Lease in 30 days. AR 325; *see* 25 U.S.C. § 2103(c). The Regional Director also identified several items for the Crow Tribe "to be aware of regarding the [Lease]" and two areas of concern. AR 324-325. The areas of concern included (1) production and sales, and (2) methods and reporting. AR 325. On July 25, 2008, the Crow Tribe and Elk Petroleum submitted a letter to the Regional Director that clarified several of the Lease's provisions. AR 307-308.

---

[1] The Regional Director supplied the administrative record ("AR") in May 2015, and Elk Petroleum did not lodge any objections to the AR. When citing to the AR, the Court will cite to the Bates stamped number on each page. The abbreviation "AR" refers solely to the administrative record filed in this Court and not to the administrative record filed before the Interior Board of Indian Appeals.

On July 30, 2008, the Regional Director sent a letter to the Crow Tribe and Elk Petroleum that is central to this dispute. AR 260-261. The letter's first sentence reads: "This is our approval of the Indian Mineral Development Act Agreement (Agreement) between the Crow Tribe of Indians and Elk Petroleum, Inc. (ELK)." AR 260. The Regional Director stated that his office "considered the social, economic, and environment aspects of the agreement" and requested comments from other government agencies. *Id.* The Regional Director noted some provisions of the Lease that he identified earlier that he felt should be clarified. Specifically, the Regional Director provided the address where Elk Petroleum should remit payments and stated that any probable violations of federal law should be reported to the BIA. *Id.* The Regional Director again expressed his concern that the production and sales and the methods and reporting were not adequately addressed in the Lease. AR 260-261. The Regional Director also noted that the clarification letter submitted by the Crow Tribe and Elk Petroleum was made a part of the Lease. AR 261. Despite these concerns, the Regional Director concluded with the following two paragraphs:

> We are satisfied that the contents of this Agreement are not adverse to the social, economic, and environmental aspects. It complies with the long-term commitment of the Agreement between the Crow Tribe of Indians and ELK.
>
> You are hereby provided an original copy of the approved Agreement. It is recorded in the Billings Land Titles and Records Office as Document No. 202 7051620813. The Rocky Mountain Regional

3

Office, Branch of Real Estate Services will retain an original copy and other will be provided to ELK, Bureau of Land Management, and the Superintendent, Crow Agency, by copy of this letter.

*Id.* A copy of the Lease was enclosed with the Regional Director's letter. AR 262-300. After the Lease's last page, the Regional Director attached a page bearing his signature and the following statement:

> THE FOREGOING OIL AND GAS LEASE BETWEEN THE CROW TRIBE OF INDIANS AND ELK PETROLEUM APPROVED AND AGREED TO.

AR 301.

Elk Petroleum sent four Notices of Staking to the Bureau of Land Management on December 22, 2008. AR 245. Other than that, there is no evidence in the AR that Elk Petroleum made any efforts to produce oil and gas on the Reservation.

On January 22, 2009, Elk Petroleum received invoices for the first year's rent in the amount of $179,123.10 and for the bonus in the amount of $447,807.75. AR 258-259. The invoices stated that failure to remit payment "may result in the cancellation of your lease." *Id.* Two months later, a BIA superintendent wrote a letter to Elk Petroleum reminding it of the invoices. AR 254-257. The letter also

noted that the leased area encompassed 89,561.549 acres instead of the previously-estimated 88,420 acres.[2] AR 254.

Elk Petroleum responded to the BIA's letter and denied the existence of a binding lease between it and the Crow Tribe. AR 249-251. Elk Petroleum argued that the Regional Director's approval was conditioned on further clarifications and changes to the concerns identified by the Regional Director. AR 249-250. Elk Petroleum stated that it did not agree to the clarifications made by the Regional Director, and therefore the Lease was never approved. AR 250.

The Regional Director responded that his "approval was not conditional and is considered final for the department." AR 246. Elk Petroleum replied by advising the Crow Tribe and the Regional Director that it no longer wished to pursue development of minerals on the Reservation. AR 237. Elk Petroleum maintained that the Regional Director never fully approved the Lease, but rather he required further action to be taken in amending the Lease. AR 238. Citing the delay and uncertainty, Elk Petroleum stated that it saw "no alternative but to cease all activities on the Crow Nation acreage." AR 239.

On October 6, 2010, the Regional Director cancelled the Lease based on Elk Petroleum's refusal to remit the bonus and rental payments. AR 196-197. The

---

[2] The estimated acreage stated in the Lease was subject to confirmation by the BIA, and the parties agreed that payments would represent the actual number of acres as determined by the BIA. AR 384.

5

Regional Director advised Elk Petroleum that it still owed the bonus and first year's rent in addition to interest calculated on the late payments. AR 197. Elk Petroleum timely appealed the Regional Director's findings to the Interior Board of Indian Appeals ("Board").

Pursuant to the Board's order, the Regional Director submitted an administrative record to the Board and Elk Petroleum. AR 152. The Board set a briefing schedule that allowed Elk Petroleum to file both an opening brief and a reply brief. AR 147. In its opening brief, Elk Petroleum argued that the Regional Director erred in concluding that the Lease was an enforceable contract. AR 136-139. Elk Petroleum presented the alternative argument that even if the Lease was valid, the Regional Director did not follow the applicable regulations when he cancelled the Lease. AR 139-140. The Regional Director and the Crow Tribe separately filed response briefs. AR 23-53. In its reply brief, Elk Petroleum requested a hearing "to resolve issues of material fact." AR 18. Specifically, Elk Petroleum argued that there was "clear evidence that the parties did not reach a meeting of the minds" and did not agree to the Lease's terms and conditions. *Id.* The Board took Elk Petroleum's request for a hearing under advisement. AR 14.

The Board affirmed the Regional Director's decision on December 19, 2012. *Elk Petroleum, Inc., v. Rocky Mountain Regional Dir., Bureau of Indian Affairs*, 56

IBIA 78 (2012).³ In an eight-page decision, the Board concluded that "[n]othing in any of the communications between BIA and the parties to the Lease or in BIA's approval of the Lease suggests that BIA's approval was, in any way, conditional or contingent." *Id.* at 82. The Board pointed to the unambiguous statements of approval and interpreted the Regional Director's remarks about the Lease's perceived ambiguities as suggestions for clarification, not as requirements or demands to amend the Lease. *Id.* at 83. The Board pointed out that most, if not all, of the Regional Director's concerns were already addressed in various federal regulations. *Id.* at 84.

The Board also rejected Elk Petroleum's alternative argument that the Regional Director failed to give the requisite notice and opportunity to cure violations before cancelling the Lease. *Id.* at 84-85. The Board found that the invoices specifically stated that the Lease could be cancelled if payment was not received. *Id.* at 85. The Board also concluded that Elk Petroleum repudiated the Lease and waived its right to notice. *Id.* In a footnote, the Board declined to hold a hearing and noted that its decision was based on undisputed facts. *Id.* at 86.

Elk Petroleum filed the instant action on March 7, 2014. In the Amended Complaint, Elk Petroleum asserts two causes of action. First, Elk Petroleum seeks a declaratory judgment that the Lease is unenforceable. (Doc. 1 at 8.) Second, Elk

---

³ The decision is also found at AR 4-12.

7

Petroleum request attorney fees. (*Id.* at 9.) For its requested relief, Elk Petroleum asks this Court to vacate the Board's and the Regional Director's determinations that Elk Petroleum is liable for payment of the bonus and first year's rent under the Lease. (*Id.* at 10.) The Regional Director counterclaims for a declaratory judgment that Elk Petroleum is liable for the bonus and rental payments and owes $869,176.89 to the BIA.[4] (Doc. 15 at 15.)

Both parties now move for summary judgment. Elk Petroleum argues that the Board's decision was arbitrary and an abuse of discretion. Elk Petroleum also contends that the Board and Regional Director deprived it of due process of law. The Regional Director argues that this Court should uphold the Board's decision and enter judgment against Elk Petroleum for the amount requested.

## II. Standards

### A. <u>Summary Judgment Standard</u>

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving

---

[4] This amount consists of the bonus, first year's rent, and accrued interest. (Doc. 15 at 13-14.) Elk Petroleum does not dispute that this amount is correctly calculated.

party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In reviewing an administrative agency decision, summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *City & Cty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997) (internal citation omitted).

B. **Standard of Review Under the Administrative Procedure Act**

The parties agree that this Court is reviewing the Board's decision under the Administrative Procedure Act ("APA"). Under the APA, a reviewing court should set aside an agency decision if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although this review is "searching and careful," the arbitrary and capricious standard is narrow, and this Court cannot substitute its own judgment for that of the agency. *In Defense of Animals v. U.S. Dept. of Interior*, 751 F.3d 1054, 1061 (9th Cir. 2014). An agency's decision is arbitrary and capricious if it fails to consider important aspects of the issue before it, if it supports the decision with explanations contrary to the evidence, or if its decision is either inherently implausible or contrary to governing law. *Id.*

## III. Analysis

As recounted above, these competing motions for summary judgment present two issues: (1) Whether the Board's decision was arbitrary, capricious, or an abuse of discretion, and (2) Whether Elk Petroleum was denied due process of law. The Court will address the arguments separately.

### A. **The Board's Decision**

Elk Petroleum contends that the Board assumed facts and did not adequately explain why the Lease was valid. It contends that it did not know "what documents the administrative record even contained" and that the Board did not "clearly set forth how conclusions were reached or…address the significant holes in them." (Doc. 33 at 12-13.) In essence, Elk Petroleum argues that the Board abused its discretion by finding that the Lease was enforceable and contends that the evidence shows that the Regional Director conditioned his approval on the parties adopting his recommended clarifications and changes. The Regional Director counters that the Board appropriately considered the evidence and acted within its discretion when it affirmed the Regional Director's decision to assess the bonus and rental payments against Elk Petroleum.

The Court finds that the Board's decision to affirm the Regional Director's decision was not arbitrary and capricious, nor was it an abuse of discretion. The Board carefully reviewed the administrative record before it and made a reasoned

decision that the Regional Director unconditionally approved the Lease. The Board clearly stated what evidence it relied upon. When the Regional Director submitted the administrative record to the Board, he also sent a copy to Elk Petroleum. AR 152. The Board consistently cited to the administrative record in its decision affirming the Regional Director's decision. *See generally Elk Petroleum*, 56 IBIA at 78-86. Elk Petroleum cannot credibly state that the Board relied "on documents and 'evidence' unknown" to it. (Doc. 33 at 7-8.)

Further, the Board acted within its discretion and did not act arbitrarily or capriciously when it determined that the Regional Director unconditionally approved the Lease. The Board first looked at the Regional Director's letter that showed his intent to approve the Lease within 30 days. *Elk Petroleum*, 56 IBIA at 83. The Board correctly noted that this was the first step towards approving the Lease, as the Regional Director was statutorily required to give 30-days' notice before approving the Lease. 25 U.S.C. § 2103(c).

The Board also rationally relied on the plain language of the Regional Director's approval letter dated July 30, 2008. The letter's very first sentence plainly states, "This is our approval of the Indian Mineral Development Act Agreement (Agreement) between the Crow Tribe of Indians and Elk Petroleum, Inc. (ELK)." AR 260. The Regional Director stated clearly his findings that the Lease was not adverse to the social, economic, and environmental interests of the

11

Crow Tribe. AR 261. The Regional Director was required to consider these factors before approving the Lease. 25 U.S.C. § 2103(b). The letter noted that an original copy of the "approved Agreement" was enclosed with the letter. AR 261. Enclosed was the Lease executed by Elk Petroleum and the Crow Tribe. AR 262-300. Attached to the Lease was a page bearing both the Regional Director's signature and a statement that the Lease was "APPROVED AND AGREED TO." AR 301. In light of the unambiguous language and findings contained in the July 30, 2008 letter, the Board did not abuse its discretion or act arbitrarily or capriciously when it determined that the Regional Director approved the Lease.

The Board also did not abuse its discretion when it found that the Regional Director did not amend or conditionally approve the Lease, but rather made suggestions for how Elk Petroleum and the Crow Tribe could clarify certain terms. *Elk Petroleum*, 56 IBIA at 83-84. As the Board noted, most of the clarifications are covered by federal regulations; the Board rationally concluded that the Regional Director was trying to avoid future misunderstandings between the parties. *Id.* at 84. Nothing in the letter indicated that the Regional Director sought to amend the lease or conditionally approve it.

Contrary to Elk Petroleum's argument, the Board clearly relied upon documents contained in the administrative record and drew its conclusions from the evidence. The Board's decision is a rational interpretation of the relevant

evidence, and this Court is bound to uphold it. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014).

## B. **Due Process of Law**

Elk Petroleum argues that it was denied due process of law in the proceedings before the Board. The Regional Director points out that Elk Petroleum did not allege a due process violation in its Amended Complaint. The Regional Director argues that the failure to plead a due process claim prevents Elk Petroleum from raising it in a summary judgment motion. Elk Petroleum did not rebut this assertion in its reply brief. The Court agrees with the Regional Director.

When a "complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008). A party may not effectively amend a complaint by raising a new theory in a summary judgment motion. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010). "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *see also Novoa v. City & Cty. of San Francisco*, 2015 WL 5169123, at *6 (N.D. Cal. Sept. 3, 2015) ("Plaintiff failed to include any factual allegations related to Defendant's violation of his due process right and did

13

not identify it as a cause of action in the complaint. Plaintiff also did not seek leave to amend his complaint to include such allegations. For that reason alone, Defendants are entitled to summary judgment on Plaintiff's due process claim").

Elk Petroleum does not allege a procedural due process violation in its Amended Complaint. (*See* Doc. 3 at 8-9.) Nor does Elk Petroleum describe the proceedings before the Board in its Amended Complaint. (*See id.* at 4-8.) Elk Petroleum also did not seek leave to file another amended complaint that contained a due process allegation. Because Elk Petroleum did not plead a due process claim, such a claim cannot form a basis for granting summary judgment.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the Board did not abuse its discretion or act arbitrarily or capriciously when it affirmed the Regional Director's decision to cancel the Lease and assess the bonus and first year's rent to Elk Petroleum. Accordingly, IT IS HEREBY ORDERED:

1. Elk Petroleum's Motion for Summary Judgment (Doc. 32) is DENIED.

2. The Regional Director's Cross-Motion for Summary Judgment (Doc. 35) is GRANTED.

3. Elk Petroleum is liable for the bonus and rental payments under the Lease.

4. Elk Petroleum owes the amount of $869,176.89 to the BIA.

5. The Clerk of Court shall enter judgment accordingly and close this case.

DATED this 17th day of February, 2016.

                                               */s/ Susan P. Watters*
                                               SUSAN P. WATTERS
                                               United States District Judge